UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANDREA M., <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN COLVIN, <br><br> Defendant. | Case No. 2:24-cv-01052-NJK <br><br> **Order** |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability and disability insurance benefits pursuant to Title II of the Social Security Act and for supplemental security income pursuant to Title XVI of the Social Security Act. Currently before the Court is Plaintiff's motion to reverse and remand. Docket No. 15. The Commissioner filed a responsive brief. Docket No. 17. Plaintiff filed a notice to submit on her initial brief rather than a reply. Docket No. 18. The parties consent to resolution of this matter by the undersigned magistrate judge. Docket No. 3; *see also* Gen. Order. 2023-12.

**I.      STANDARDS**

    A.      <u>Judicial Standard of Review</u>

The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action...brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing

the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id*.

The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence. *Id*. To that end, the Court must uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. In determining whether the Commissioner's findings are supported by substantial evidence, the Court reviews the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the Administrative Law Judge ("ALJ") to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See, e.g., Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B. Benefits Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. *See, e.g.*, 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. § 404.1520(a)(4). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. § 404.1572(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence does not establish a significant limitation of an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 404.1522. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not

disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(d). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The residual functional capacity is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. Social Security Rulings ("SSRs") 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529. To the extent that statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. SSR 16-3p. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

The fourth step requires the ALJ to determine whether the individual has the residual functional capacity to perform his past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565. If the individual has the residual

functional capacity to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    BACKGROUND**

   A.    Procedural History

On May 3, 2021, Plaintiff filed an application for disability, disability insurance benefits, and supplemental security income with an alleged onset date of December 1, 2019. *See, e.g.*, Administrative Record ("A.R.") 196-202. Plaintiff's application was denied initially and again on reconsideration. A.R. 119-126, 136-142. Plaintiff filed a request for a hearing before an administrative law judge. A.R. 143. On August 1, 2023, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ Cynthia R. Hoover. *See* A.R. 55-77. On November 15, 2023, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision. A.R. 19-32. The Appeals Council denied Plaintiff's request for review. A.R. 1-4. On June 4, 2024, Plaintiff commenced suit seeking judicial review. Docket No. 1.

   B.    The Decision Below

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).[1] A.R. 19-32. At step one, the ALJ found that Plaintiff had not engaged in

---

[1] The five-step process is largely the same for both Title II and Title XVI claims. For a Title II claim, however, a claimant must also meet insurance requirements. 20 C.F.R. § 404.130.

5

substantial gainful activity since the alleged onset date. A.R. 24. At step two, the ALJ found that Plaintiff had the following severe impairments: systemic lupus erythematosus; degenerative disc disease; osteoarthritis; obesity; pulmonary hypertension; and angina without ischemic heart disease. A.R. 24-25. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. A.R. 25. The ALJ found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk six hours; sit six hours; never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently stoop and kneel; occasionally crouch and crawl; avoid concentrated exposure to vibration, and hazards such as unprotected heights and dangerous moving machinery like chainsaws and jackhammers; and frequent handling and fingering.

A.R. 25-30. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work as a certified nurse assistant. A.R. 30. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and RFC. A.R. 30-31. Based on all of these findings, the ALJ found Plaintiff not disabled from the alleged onset date. A.R. 31.

### III.   ANALYSIS

Plaintiff submits that the ALJ's decision is not supported by substantial evidence. Docket No. 15 at 5. Plaintiff submits that significant evidence exists that has "never been reviewed by a medical professional" and, thus, makes the ALJ's adoption of the state agency assessments and opinions problematic. *Id*. at 7-8. Additionally, Plaintiff submits that the ALJ made findings without the benefit of a medical opinion, which amounted to the ALJ "simply substiut[ing] her own opinion" for a medical opinion. *Id*. at 8-9. Specifically, Plaintiff argues that "the lack of medical opinion" left an evidentiary gap that the ALJ should have reconciled. *Id*. at 9. The

---

The ALJ found that Plaintiff met the insured status requirement through December 31, 2024. A.R. 24.

6

Commissioner responds that substantial evidence supports the ALJ's assessment of Plaintiff's RFC. Docket No. 17 at 5.

Plaintiff further submits that the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's symptom testimony. Docket No. 15 at 10. The Commissioner responds that the ALJ reasonably discounted Plaintiff's self-reports because they conflicted with the medical records, and that the ALJ's reasoning was sufficiently specific. Docket No. 17 at 9-10.

"[R]esidual functional capacity is the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC determination considers all medically determinable impairments, including those that are not severe. *Id*. at §§ 404.1545(a), 416.945(a). The RFC assessment must consider all evidence in the record and "contain a thorough discussion of the objective medical and other evidence." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing Social Security Ruling 96-8p, 61 Fed. Reg 34474, 34478 (July 2, 1996)). "The RFC is an administrative assessment of the extent to which an individual's medically determinable impairments...may affect his or her capacity to do work-related physical and mental activities." *Id*. (quoting SSR 96-8p, 61 Fed. Reg at 34475). "[A]t the administrative law judge hearing level...the administrative law judge...is responsible for assessing [Plaintiff's] residual functional capacity." 20 C.F.R. §§ 404.1546(c), 416.946(c). The residual functional capacity determination does not need to copy the exact opinion of any particular doctor, but "the ALJ is responsible for translating and incorporating clinical findings into a succinct" residual functional capacity. *Rounds v. Commissioner*, 795 F.3d 1177, 1185-86 (9th Cir. 2015), *as amended*, 807 F.3d 996, 1005-06 (9th Cir. 2015).

A.   The ALJ's Evaluation of Medical Evidence

When evaluating medical evidence, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R § 404.1520c(a). The ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" based on certain specified factors. *Id*. The most important factors are supportability and consistency, which the ALJ must address. 20 C.F.R. § 404.1520c(b). "Supportability means the extent to which a medical source supports the medical

7

opinion by explaining the 'relevant...objective medical evidence.' Consistency means the extent to which a medical opinion is 'consistent...with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. §§ 404.1520c(c)(1) & (c)(2)).

Plaintiff submits that the ALJ's RFC finding is not supported by substantial evidence. Docket No. 15 at 5. The Commissioner submits that the ALJ reasonably assessed Plaintiff's RFC based on substantial evidence. Docket No. 17 at 5. As explained below, the Court finds no error in the ALJ's RFC determination.

a. Medical Doctors

Plaintiff submits that "the ALJ found the opinions of Dr. Sheikh, nurse practioners Lopez and Veloso, and physician assistant Murray not persuasive except for that which supports the ALJ's [RFC]…thus, the ALJ, without the benefit of a medical opinion determined that [Plaintiff's] lumbar spine was a severe impairment; [Plaintiff] did not suffer from severe plantar fasciitis and even assessed more limitations than what Drs. Kaur and Novak opined in relation to frequent handling and fingering." Docket No. 15 at 8. Plaintiff submits that, by "translating raw medical findings in the form of MRIs, objective examinations, and bilateral injections" and "concluding that it would not impact the ability to lift, carry, stand, or walk," the ALJ analyzed raw medical data and translated it into functional terms. *Id*. at 8-9. Plaintiff provides no case law in support of her contention that an ALJ's determination must be tethered to a medical opinion.[2] Instead, the regulations simply state that the ALJ must base the RFC on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a). The regulation instructs the ALJ to consider the persuasiveness of the medical opinions based on the supportability and consistency of the opinions. 20 C.F.R.

---

[2] Plaintiff cites to multiple cases, *see* Docket No. 15 at 9, but the cases are not applicable here as they refer to an ALJ's discounting of medical opinions without support. *See Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999) (finding that the ALJ must set out in the record his reasoning and evidentiary support for his interpretation of the medical evidence); *see also Aliza W. v. Saul*, No. CV 20-09189-JEM, 2021 WL 3190902 (C.D. Cal. July 28, 2021) (finding that the ALJ had a lack of medical opinion support for her RFC due to her failure to cite to *any* medical opinion in the record). Here, the ALJ discounted medical opinions and provided adequate reasoning. Plaintiff's cited cases do not support the proposition that an ALJ's finding *must* be tethered to a medical opinion.

8

§ 404.1545c(b-c). The ALJ does not need to "accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### i. Fareed Sheikh

The ALJ summarized Sheikh's findings and concluded that his opinion was not persuasive. A.R. 29. Specifically, the ALJ found that Sheikh's opinion that Plaintiff "is capable of low stress jobs, requires unscheduled work breaks up to five times a day, can sit, stand and stand/walk about two hours, and will be absent three days a month," A.R. 29; *see also* A.R. 1094-1096, was unpersuasive because it was unsupported by explanation. A.R. 29. The ALJ noted that, although Sheikh was unable to answer several questions as Plaintiff's cardiologist, *see* A.R. 1094-1096, he still restricted Plaintiff to limitations. *Id*. Further, the ALJ noted that Sheikh's opinion is overly restrictive and inconsistent with the record, such as Plaintiff's conservative treatment with good results and her intact daily activities, as discussed more thoroughly below. *Id*. The Court finds that the ALJ's discounting of Sheikh's opinion is supported by substantial evidence.

### ii. Jenna Lopez and Angela Murray

The ALJ summarized Lopez and Murray's findings and concluded that their opinions were not completely persuasive. A.R. 29. Lopez found that Plaintiff requires "four unscheduled breaks per day, cannot squat, can sit and stand/walk about four hours, lift and carry 20 pounds occasionally and less than 10 pounds frequently, and will miss about four days of work per month." A.R. 29; *see also* A.R. 1179-1181. Murray found that Plaintiff is "capable of low stress jobs, cannot squat, could sit and stand/walk less than two hours, lift and carry 20 pounds rarely and less than 10 pounds frequently, has 1/5 grip strength, and will be absent from work more than four days per month." A.R. 29; *see also* A.R. 1183-1185. The ALJ found the recommendations for light work persuasive because they were consistent with Plaintiff's ability to perform various daily activities, *see* A.R. 259-268, her conservative course of treatment which has resulted in Plaintiff's stable lupus, A.R. 406, increased strength and range of motion, A.R. 1156, and unremarkable objective findings of record. A.R. 29. However, the ALJ did not find persuasive the remaining recommended limitations because they were overly restrictive and inconsistent with the record.

*Id*. The ALJ concluded that, because Plaintiff's symptoms were generally controlled with conservative measurements and the objective findings of record indicate that Plaintiff is not as limited as alleged, Plaintiff can perform light work with limitations consistent with her RFC. *Id*. The Court finds that the ALJ's discounting of Lopez and Murray's opinions is supported by substantial evidence.

      iii. Harlyn Voloso

The ALJ summarized Voloso's findings and concluded that her opinion was not persuasive. A.R. 29. Voloso found that Plaintiff "is incapable of low stress jobs, cannot squat, can stand/walk less than two hours, rarely lift and carry, and will miss about four days per month." A.R. 29; *see also* 1183-1188. The ALJ noted that Voloso only had a brief treating relationship with Plaintiff, as the treatment history only began on January 31, 2023. A.R. 29; *see also* A.R. 1188. The ALJ also found that Voloso's opinion was overly restrictive and inconsistent with the overall record. A.R. 29. For example, Plaintiff's increased range of motion and strength, *see* A.R. 1146, 1156, Plaintiff's normal cardiac functioning, *see* A.R. 970-971, and Plaintiff's testimony about her daily activities despite her symptoms, *see* A.R. 68-70. The Court finds that the ALJ's discounting of Voloso's opinion is supported by substantial evidence.

    b. <u>Medical Evidence</u>

Plaintiff submits that, while the ALJ found that the state agency assessments done by Amanjot Kaur and Kerry Novak were persuasive, there is "significant probative evidence that has never been reviewed by a medical professional to determine the impact on [Plaintiff's] ability to work in relation to [Plaintiff's] lumbar spine and right knee pain." Docket No. 15 at 7. Specifically, Plaintiff submits that Kaur and Novak only assessed Plaintiff's lupus, obesity, left knee chondromalacia, obesity, and plantar fasciitis, which amounts to only reviewing 398 pages. *Id*. Plaintiff submits that there are "close to 492 pages" that were never reviewed by a physician. *Id*. Further, Plaintiff submits that "the ALJ simply substituted her own opinion as a medical opinion and that is legal error."[3] Docket No. 15 at 9. The Commissioner submits that the ALJ

---

[3] Plaintiff cites to *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999) to stand for the assertion that the ALJ may not substitute her interpretation of the medical evidence for the opinion of medical professionals. Docket No. 15 at 9. However, the court in that case held that there was no

10

properly reviewed all the evidence before her, including the prior administrative medical findings of Kaur and Novak, the medical record, and the testimony through the date of the hearing. Docket No. 17 at 5-6. The Commissioner further submits that Plaintiff provides no legal authority that every piece of medical evidence must be reviewed by a medical professional. *Id*. at 7.

The Court finds that the ALJ did not substitute her lay opinion in place of the medical evidence in the record. Instead, the ALJ considered the evidence provided by Plaintiff's medical providers in determining Plaintiff's RFC. This was not "raw data," but instead information that Plaintiff's medical providers interpreted and recorded in Plaintiff's medical records and the ALJ considered. For example, Plaintiff asserts that no physician ever reviewed Plaintiff's CTA scan of her abdominal aorta, Docket No. 15 at 7, yet the September 20, 2022, report from Nevada Heart and Vascular Center analyzes the scan. *See* A.R. 796-777. Further, Plaintiff submits that that no medical professional reviewed Plaintiff's October 27, 2022, lumbar spine MRI, Docket No. 15 at 8, yet the November 3, 2022, exam report from Advanced Orthopedics and Sports Medicine analyzes the imaging that the ALJ considered in her RFC finding. *See* A.R. 32; see *also* A.R. 828-831. ALJs do not need to seek the opinion of a medical expert every time they review new medical evidence and make an RFC determination. *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (determining RFC "is the responsibility of the ALJ, not the claimant's physician") (citing 20 C.F.R. § 404.1545). There is a presumption that ALJs are capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled. *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). Here, the ALJ acknowledged what the radiological imaging showed, and then interpreted the data to determine Plaintiff's RFC.

Plaintiff further submits that the alleged lack of any medical opinion left an evidentiary gap. Docket No. 15 at 10-11. Plaintiff submits that the ALJ should have ordered an updated examination, used a medical expert to testify at the hearing, or remanded the matter back to the

---

medical *evidence* to support the ALJ's finding as the ALJ relied on the plaintiff's testimony instead of relying on the opinions of physicians. *Tackett*, 180 F.3d at 1103. Here, the ALJ supported her finding of severity and RFC with citations to medical evidence.

11

state agency. *Id.* at 10. The Commissioner submits no ambiguity existed, as there were years of medical records that largely showed stability and some improvement with treatment. Docket No. 17 at 8.

For example, Plaintiff submits that the ALJ "should have reconciled the discrepancy especially with the lumbar spine MRI identifying severe central canal stenosis." Docket No. 15 at 9-10. However, the ALJ considered Plaintiff's severe central canal stenosis, A.R. 27, and the impact of Plaintiff's central canal stenosis was analyzed by treating physician Angela Murray, A.R. 42, which the ALJ found to be unpersuasive, A.R. 29. The Court therefore finds that the ALJ's RFC determination is supported by substantial evidence.

### B. The ALJ's Evaluation of Plaintiff's Testimony

Credibility and similar determinations are quintessential functions of the judge observing witness testimony, so reviewing courts generally give deference to such assessments. *See, e.g., Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). In the Social Security context, "[t]he ALJ is responsible for determining credibility." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). An ALJ's assessment of a claimant's testimony is generally afforded "great weight" by a reviewing court. *See, e.g., Gontes v. Astrue*, 913 F. Supp. 2d 913, 917-18 (C.D. Cal. 2012) (citing *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Circ. 1989) and *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)). If an ALJ's determination to discount a claimant's testimony is supported by substantial evidence, a court should not second-guess that determination. *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).[4]

The ALJ is required to engage in a two-step analysis to evaluate a claimant's testimony as to pain and other symptoms: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain or other symptoms alleged; and (2) if so, whether the intensity and persistence of those symptoms limit that individual's ability to perform work-related activities. *See* Social Security Ruling 16-3p,

---

[4] The regulations previously asked the ALJ to assess "credibility." Social Security Ruling 96-7p. The current regulations require the ALJ to instead "evaluate" the claimant's statements. Social Security Ruling 16-3p. This change does not alter the deferential nature of the Court's review.

12

2017 WL 5180304. In the absence of evidence of malingering, an ALJ may only reject a claimant's testimony about the severity of symptoms by giving specific, clear, and convincing reasons. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Factors that an ALJ may consider include inconsistent daily activities, an inconsistent treatment history, and other factors concerning the claimant's functional limitations. *See* Social Security Ruling 16-3p, 2017 WL 5180304.

Here, the ALJ determined that Plaintiff had systemic lupus erythematosus, degenerative disc disease, osteoarthritis, obesity, pulmonary hypertension, and angina without ischemic heart disease. A.R. 24. Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of the symptoms was not entirely consistent with the medical evidence and other evidence in the records. A.R. 26. Therefore, the ALJ discounted the credibility of Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms. As no evidence of malingering exists in the record, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony based on a consideration of the entire case record, including Plaintiff's testimony at the hearing.

The ALJ stated:

> [Plaintiff] alleged that she is unable to work due to lupus, hypertension, and osteoarthritis in the back, hands, and knees. She reported that she has inflammation from lupus. She indicated that lupus affects her heart and lungs, and causes constant pain. She reported that she has lupus flares twice a week and four major flares a year. She testified that she is under the care of a rheumatologist and takes medication for her conditions. She reported that she completed 12 weeks of physical therapy. She testified that she takes muscle relaxers for back pain. She said she cannot go for walks due to pain symptoms and must lie down several times a day. She indicated limited daily activities, but stated that she could prepare simple microwave meals, put laundry into a washer and dryer, shop up to 45 minutes, sweep, go to restaurants, watch television, spend time with her children, and use the internet for up to 20 minutes before experiencing pain.

A.R. 26.

Plaintiff submits that the reasons provided by the ALJ are not clear or convincing. Docket No. 15 at 13. Specifically, Plaintiff submits that "the law is clear an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC] determination." Docket No. 15 at 12. The Commissioner submits that the ALJ provided specific reasons for discounting Plaintiff's statements that satisfy the standard. Docket No. 17 at 9.

In discounting Plaintiff's credibility, the ALJ found that the record shows that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but not to the extent alleged by Plaintiff. A.R. 26. The ALJ based this finding on the record of evidence, which did not support the degree of limitations alleged. *Id*. The Court finds that the ALJ properly considered the objective medical evidence in the record when discounting Plaintiff's symptom testimony. "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). Further, when discounting Plaintiff's symptom testimony, "the 'clear and convincing' standard requires the ALJ to show his work." *Id*. at 499. "The standard isn't whether [the C]ourt is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id*. The ALJ does not need to recite "magic words." *Magallanes v. Bowen,* 881 F.2d 747, 755 (9th Cir.1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion").

Here, the ALJ pointed to specific evidence in the record that contradicted Plaintiff's symptom testimony. For example, Plaintiff claimed joint pain in her legs, hips, back, arms, hands, and fingers, and swelling. A.R. 65, 69. However, the ALJ noted that physical examination findings revealed no active inflammation or synovitis of the upper and lower extremity peripheral joints, no evidence of joint effusions or swelling, good range of motion of the extremities, and that Plaintiff was able to fully abduct her shoulders and ambulate well. A.R. 26; *see also* A.R. 406, 488, 574, 811. The ALJ reasoned, that while there were positive findings to support Plaintiff's alleged limitations, the overall record was not entirely consistent with Plaintiff's alleged intensity, persistence, and limiting effects of her symptoms. A.R. 28. The Court, therefore, finds that it was

reasonable for the ALJ to reference the inconsistencies between Plaintiff's subjective symptom testimony and the objective evidence in the record when discounting her testimony.

### a. Daily Activities

Plaintiff submits that the ALJ discounted her complaints due to the extent of her daily activities. Docket No. 15 at 14. Plaintiff further submits that "none of the activities adduced under examination or otherwise reflected in the record exceed the limitations identified by [Plaintiff] of her good days versus her bad days versus a lupus flare." *Id*. Plaintiff submits that, because the ALJ "failed to articulate legally sufficient reasons for discounting [Plaintiff's] good day and bad day limitation testimony, her decision cannot stand." *Id*. at 15. The Commissioner submits that the ALJ was justified in discounting Plaintiff's allegations as the ALJ concluded that Plaintiff's daily activities suggested a greater degree of functioning than she claimed. Docket No. 17 at 13.

In general, an ALJ may consider a claimant's daily activities in determining credibility. *See* 20 C.F.R. §§ 404.1529(a), (c)(3)(i) (activities of daily living are relevant to the credibility determination); see also *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Even if the claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022)

Here, the ALJ discounted Plaintiff's testimony based on the record of evidence, most notably Plaintiff's statements indicating that she retained the ability to walk, drive, prepare simple meals, shop, spend time with her children, and perform light household chores. A.R. 28; *see also* A.R. 261-264. The ALJ noted that some of the physical abilities required to perform these activities are identical to those that are required to obtain and maintain employment. *Id.* at 28.

It is not the Court's role to "second-guess" an ALJ's reasonable interpretation of a claimant's testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (internal citations omittied); *see also Thomas*, 278 F.3d at 959 (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"). Plaintiff criticizes the ALJ for combining all her daily activities and "paint[ing] a different picture of" of Plaintiff without taking into account

15

the pace and the breaks necessary for Plaintiff to complete these activities. Docket No. 15 at 15. However, after properly discounting Plaintiff's subjective testimony in her decision, the ALJ did not need to include in her list of Plaintiff's daily activities "all of her caveats accompanying her description of those activities." *Kijakazi*, 53 F.4th at 500, n. 3. An ALJ may properly discount a plaintiff's subjective symptom statements based on her activities even when they suggest "some difficulty" functioning. *Cecilia H.R. v. Kijakazi*, No. CV 20-7836-JPR, 2022 WL 21320594, at *7 (C.D. Cal. Dec. 7, 2022) (internal citation omitted). The Court finds that the ALJ's findings regarding Plaintiff's daily activities are supported by substantial evidence.

          b. Medical Treatment

Plaintiff submits that her treatment is not conservative and, therefore, it was improper for the ALJ to discount her complaints. Docket No. 15 at 13. The Commissioner submits that the ALJ appropriately considered Plaintiff's treatment history in evaluating the intensity of Plaintiff's subjective symptom complaints. Docket No. 17 at 11.

An ALJ should consider the frequency, type, and effectiveness of treatment in weighing the claimant's allegations. 20 C.F.R. § 416.929(c)(iv)-(v). An ALJ is permitted to discount a claimant's testimony based on the effectiveness of treatment. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999); *see also Warren v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits"). Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *See* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1). The conservative nature of treatment is a sufficient basis for discounting a claimant's testimony. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

First, Plaintiff submits that there are no rheumatological records that point to stability or improvement of her lupus, nor do the records show a more aggressive treatment option. *Id*. The ALJ found that the record shows Plaintiff was under medication management by a rheumatologist that showed improvement. A.R. 26-27; *see also* A.R. 406, 458, 498, 546, 574, 579, 682, 840. The ALJ also found that the record "did not reflect evidence of extraordinary or aggressive treatment

16

commensurate with the alleged limiting effects of symptoms" and thus, the lack of a more aggressive treatment suggested that Plaintiff's symptoms are not as severe as she alleged. A.R. 28.

Second, Plaintiff submits that she has undergone epidural injections which, she contends are not conservative.[5] Docket No. 15 at 13. The ALJ found that Plaintiff was treated with injection therapy, which helped control her symptoms. A.R. 27-28; *see also* A.R. 1045-1046, 1191-1192. Further, the ALJ found that physical therapy helped improve and control Plaintiff's various physical symptoms. A.R. 28; *see also* A.R. 1146.

Lastly, the ALJ found that Plaintiff was under medication management for control of her hypertension symptoms, which largely resulted in a lack of negative symptoms and overall stable blood pressure. A.R. 27; *see also* A.R. 504. The ALJ also found that Plaintiff has reported that she is noncompliant with her hypertension treatment, but that "the current medication is very helpful and keep[s] her [blood pressure] down," and that she feels her blood pressure is high because she does not take her medication as ordered. A.R. 27; *see also* A.R. 540, 546.

Plaintiff acknowledges that she has benefitted from treatment, but submits "that does not mean she is cured or that her good days outweigh her bad days." Docket No. 15 at 13. In some circumstances, courts have rejected an ALJ's reliance on temporary periods of improvement to discount a claimant's testimony when the ALJ did not account for the overall diagnostic picture. *Gutierrez v. Saul*, No. 2:18-CV-02068-NJK, 2020 WL 972751, at *5 (D. Nev. Feb. 28, 2020) (internal citations omitted). Nonetheless, courts generally affirm an ALJ's reliance on records showing nondisabling limitations even through there may be some evidence that could support a contrary finding. *Id*. Here, the ALJ factored in the positive findings of record that support Plaintiff's alleged limitations in her RFC. A.R. 28. For example, considering Plaintiff's lupus, hypertension, and orthopedic issues, the ALJ precluded Plaintiff from climbing ladders, ropes, or scaffolding. *Id*. Viewing the record in this case, the Court finds that the ALJ's finding with respect

---

[5] The Court notes that Plaintiff submits that the ALJ characterized Plaintiff's epidural injections as conservative treatment, *see* Docket No. 15 at 13; however, the ALJ classifies Plaintiff's treatment overall as conservative, which includes medication management, injections, and physical therapy. A.R. 28.

17

to the effectiveness of treatment is supported by substantial evidence notwithstanding the existence of evidence that could potentially support a contrary finding.

The ALJ gave specific, clear, and convincing reasons for discounting Plaintiff's testimony based on these findings.

**IV.   CONCLUSION**

For the reasons discussed above, the Court **DENIES** Plaintiff's motion to reverse and remand. Docket No. 15. The decision below is **AFFIRMED**. The Clerk's Office is **INSTRUCTED** to **ENTER FINAL JUDGMENT** accordingly and to **CLOSE** this case.

Dated: January 15, 2025

Nancy J. Koppe
United States Magistrate Judge